Good morning. I'm Stacey Phipps, Assistant Attorney General representing the North Carolina Department of Labor, Josh Dobson, Commissioner of Labor. We're here today because on September 1st, September 21st of 2020, a 44-year-old worker and a 48-year-old worker burned to death in a North Carolina paper mill. The fire was ignited by an ISG employee's heat gun making contact with a flammable resin. Following a fatality inspection mandated by state law, ISG was cited for multiple OSHA violations. The North Carolina Department of Labor, through its OSH Division, is charged by state statute with ensuring, so far as possible, every working man and woman in the state of North Carolina safe and healthful working conditions and to preserve our human resources. North Carolina OSH has statutory authority to conduct inspections for compliance with safety and health standards. ISG's violation of state OSHA standards resulted in the death of two employees. ISG was cited. Before ISG had even filed a notice of contest in the proper state forum, it filed this suit in federal court to circumvent that adjudicatory process. ISG is contesting the citations it received before an administrative law judge. In that citation, one, that a hazard existed. Two, that employees were exposed to that hazard. Three, that the hazard created the possibility of an accident. Four, the substantially probable result of an accident could be death or serious physical injury. But counsel, the district court denied your claim of sovereign immunity and that's the nutshell. What is your argument that the district court was wrong and that you have sovereign immunity here? Yes, your honor. The district court held that sovereign immunity did not apply under the Ex parte Young exception. In Ex parte Young, it was held... Just tell me why you think sovereign immunity should apply. I want to get into... To me, that's what's before us. I want to know why, in your view, you think it should apply. I'm just interested in hearing it. First of all, the real party in interest here is the state. That was true in Ex parte Young too. Okay. Thank you, your honor. The complaint seeks retroactive relief. The citations here were issued in 2020. And so the relief that's sought is something that would undo those citations from the past and therefore would be retroactive relief. And that would take it out of the Ex parte Young exception, which would then have 11th Amendment immunity apply. And related to that is the standing issue. If they're not seeking retroactive relief, then what is it that's going to remove the purported harm of having received those citations? The complaint is framed prospectively. In other words, the complaint is framed in a way that Ex parte Young appears to authorize. And what they are claiming is, when you read the complaint, it seems to me the gravamen of it is prospective relief, equitable and injunctive relief to have the Department of the North Carolina government cease its practice of rewarding officials for the number of citations that they issue. And so they say there's a pattern of behavior going on in state government which contradicts the OSHA statute. And we want to put an end to that. The complaint is drawn in those terms. The prayer for relief is framed prospectively. And so the question is, you need to just tell me, I'm interested in hearing it, why you think this is in reality retrospective relief, which is prohibited under Edelman v. Jordan? Because as I understand it, the fines that were leveled, the $112,000 in citations and what have you, that's being litigated in some way in the state court system. Whereas the question that's litigated here is whether in the future the violation of the OSHA statute should continue. And so that just appears spatially to be within the framework of ex parte young. Now, maybe my impression is wrong here. Maybe you can convince me that this is just artful pleading and that in reality it's retrospective. But I need to hear that. Yes, your honor. Thank you. Artful pleading is exactly what I was going to say. In reading the prayer for relief directly under subsection G, the last clause says that it would have an including initiating or maintaining administrative proceedings. They are in fact asking for North Carolina Department of Labor to stop administrative proceedings that are already underway because those are related to the incident in 2020 and the citations that were issued in 2021. But at absolute best, maybe that's an argument that one form of relief they're arguably seeking is barred by sovereign immunity. But that's not an argument the entire lawsuit is barred by sovereign. Well, that leads into the standing argument as well, because under Lujan versus Defenders of Wildlife, the three items that are outlined for standing. Well, there's a threshold question though, right? Because if you had filed a motion to dismiss for lack of standing, if let's just say that's the only motion you had filed and the district court had denied that, you absolutely could not have brought an interlocutory appeal of that. There's tons of cases that say that. So what do you say to the response of your friend on the other side? We are here on pendant appellate jurisdiction under the collateral order doctrine for this. Sorry, we're here. We have collateral order jurisdiction over the sovereign immunity denial and your friend on the other side makes an argument that says you don't have pendant appellate jurisdiction over the standing issue. You didn't file a reply brief. So what is your response to that argument? The answer can be that the issues are inextricably intertwined because the very factual basis that underlines our 11th immunity arguments also underlies the standing issue. What factual basis? In both cases, they're seeking redress for the citations that were and it doesn't redress their alleged injury in fact and then there's no standing. What's your best case for that? I mean, there are cases where we've literally said just because you can appeal an immunity denial doesn't mean you can also appeal standing at the same time. Yes, I believe under Antrican that they are inextricably related. So you're not arguing that every sovereign immunity and every standing issue is inextricably intertwined. You're arguing this particular standing and this particular? Yes, that's correct. And again, it's because the basis of their prayer for relief addresses retroactive relief and if it doesn't call for retroactive relief then it's not really redressing their alleged injury. If the injury in fact is the receipt of citations and the prosecution of those citations which has already occurred then their suit either addresses it which is retroactive or it doesn't address it, meaning that it fails under a test for standing. A bit of a heads-I-win-tails-you-lose kind of situation? Yes. Returning to the standing items that are listed in the Lujan versus Defenders of Wildlife, there must be an injury in fact. ISG's alleged injury is that it received OSHA citations following a fatality inspection where two workers died. ISG describes the issuance of the citation and penalties as its primary injury and its complaint. What they seek is retroactive relief. In their brief at page 17, they say beginning in September 2020, North Carolina OSHA opened an inspection of ISG and in March 2021 issued citation items to ISG and each such citation item assessed a financial penalty totaling $112,000. This is from the original complaint. Redressing this injury would require retroactive relief. The second prong for standing is that the adhere to health and safety standards, it has been issued citations. Here any purported injury was caused by a lack of compliance with OSHA standards and not by the alleged failure to comply with an administrative regulation about federal employee performance evaluations in the federal code. Two employees died in a fire at ISG's work site which triggered a fatality investigation in accordance with state OSHA provisions. Once that inspection began, citations were issued because health and safety violations were documented. The causation is lacking here. Further on page 18 of its brief, ISG bemoans the number of citation items and says there is no third-party action. It's true that no third-party action because they injured themselves by failing to follow the safety and health standards. The third prong of the test for standing is that the remedy must be likely to redress the injury. What would redress the purported injury of being issued the citations? ISG was cited, that already happened. Withdrawal, rescission or deletion of those citations as if they were never issued is the only remedy for that alleged harm. That is a retroactive remedy which takes us to our sovereign immunity defense. Did you make a standing argument in the district court? We did not, your honor. If we just said the district court correctly held you don't have sovereign immunity, there's nothing to stop you from moving to dismiss for lack of standing on precisely this ground and to let the district court consider that argument in the first instance? We made jurisdictional arguments. My question is whether you made the standing argument you're currently making right now before the district court. We have consistently made various immunity. Oh, I certainly agree with that. But I guess I'd say under 12b1 you can make a jurisdictional argument at any time so there's nothing that would stop you from making these precise same arguments to the district court. Right, the steel company case versus citizens for a better environment says that jurisdiction is a threshold matter and that it can be raised at any time. As you're aware, it can be raised sui sponte by the court and that's part of our argument that it's inextricably intertwined. Further, as stated to the district court, there are other avenues that the parties have that could address this. The redress they seek be given by other forums. They are, as was mentioned, proceeding with an appeal or a contestment in state court of the actual citations themselves. They did not avail themselves of the CASPA process, which is the Complaints Against State Plan Administrators. That's contained in the record as an exhibit to our answer, which is at page 147. Now, the magistrate focused on the may language of CASPA saying that someone may initiate a complaint through that forum, but there is, however, no other statutory authority or CFR authority that allows for a private action or an action in federal court if you have a complaint about a state plan. I believe I'm over my time now. Glad to answer any questions. Thank you, Ms. Phelps. Mr. Vance. Chief Judge Gregory, and please the court, Travis Vance with Fisher & Phillips. We represent Industrial Services Group doing business as Universal Blasco. I'll refer to them as Blasco for ease of reference. The district court's order denying defendants' motion to dismiss based on sovereign immunity should be affirmed because ex parte young on all fours provides that defendants are not immune from Blasco's suit. Blasco has sued two individuals who are state officials and their official capacities for prospective, injunctive, and declaratory relief. Defendants are not afforded the protection of 11th Amendment immunity due to their ultra-virus enforcement activities. Thus, ex parte young, the ex parte young exception to sovereign immunity applies. This court's review ends with that determination. So there are a couple exceptions to ex parte young, right? There's like the Coeur d'Alene, this is about real property and it's going to screw up real property, and there's Seminole Tribes' intricate remedial scheme exception, but it's my understanding that none of those arguments were made here, that like an exception to the young exception applies? That's correct, Judge Hydens. Never saw that in the pleadings. No, none of those arguments were made. It's very straightforward. It's just like ex parte young. In that case, of course, it was railroad rates being changed by the state and the railroad sued the state to stop that action and they said essentially that the state officials did not get the cloak of immunity because they were violating federal law. That's exactly what we have here in North Carolina. You have state officials. We've sued them in their official capacities. They have violated federal law, which we've noted, which is Section 8H of the OSHA Act. And because they are violating federal law on an ongoing basis, they are not given the cloak of sovereign immunity, which is exactly what ex parte young. All right. You're not contesting, counsel. You're not contesting the fact that on remand, the state can raise the standing argument, are you? No, I think jurisdictionally that can be raised at any time. All right. But I mean, they can raise on remand the fact that these citations or whatever the behavior of the North Carolina Department didn't cause the injury that you complain of. What caused the injury in terms of the citations was the fire and the obligation that North Carolina had to investigate safety violations that may have caused the fire. And that it didn't have anything to do with OSHA quotas. In fact, OSHA evaluates its employees by the number of citations. But this basic issue of causation is open to the North Carolina on remand. You would concede that, would you not? Yes, sir. I'm sure that there will be issues of standing and other matters on the merits with respect to this matter once it's remanded with instruction or this district court's decision is affirmed. But if you look at the Verizon Maryland case, which I would invite the court to look at, the district court relied on it. It's on all squares, I think, very instructive. It's a Supreme Court decision. Justice Scalia wrote the opinion. Very instructive. But their judge, Justice Scalia, says that in determining whether the ex parte young doctrine avoids an 11 minute bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as and that is exactly what Blasco has done here. And further, the Verizon case, it goes on to say, in that case, it was the state version of the Federal Communications Commission. They had issued an order telling Verizon Maryland to pay a sum of money. And Verizon Maryland filed an ex parte young action. It actually came through the Fourth Circuit. And the Supreme Court decided that it could go forward under ex parte young. And in the decision, the Supreme Court says, very instructive. It also says in evaluating that claim, it may or may not be true that state contract law and not federal law, as Verizon contends, applies to the disputes regarding the interpretation of Verizon's agreement. But the inquiry into whether suit lies under ex parte young does not include an analysis of the merits of the claim. So here, what Blasco has done is it's got a complaint for injunctive declaratory relief that is solely prospective against two state officials and their official capacities. It meets on all fours ex parte young. The analysis ends there. You don't go any further on the merits. With respect to standing... Does your prayer for relief contain any mention of monetary relief or relief from the $112,000 that was levied in citation? Absolutely not, Judge Wilkinson. We did not seek any money whatsoever. And the citations are being contested through the state OSHA review commission. The retrospective relief, in your view, is being debated and conducted within the state system? Well, the state system is we're contesting the citations. And so the federal lawsuit we've filed... Within state administrative law, within the state administrative system, right? Right. And I'm not necessarily considering that to be retrospective, Your Honor, but we have contested them under that system because we have an obligation to do that within a certain period of time. Well, but there's a lot stronger case to be made for the... If you're contesting the monetary award or the citations, that that's retrospective. You may not agree with that, but there's a lot stronger Edelman v. Jordan argument to be raised with respect to that. What I understand you're telling me is that in the prayer for relief in your complaint, it's framed purely in terms of injunctive relief that pertains to future conduct on the part of the Department of Labor and whether it's in conformity with the federal statute and specifically the prohibition in the federal statute against using performance evaluations by the number of citations issued. That's what I understand. You may not win on the merits. I have my real questions about that, particularly in view of the causation here and whether the Department of Labor has anything to do with it. I think all they're doing is investigating a fire and I'm not sure that has a darn thing to do with the policy of DOL that you take exception to. Your only point is that's for remand. That's correct, Your Honor, and if causation has to be talked about. There was an accident, a very tragic situation where two gentlemen of another contractor passed away and there were citations issued. We believe that some of those citations were issued because of this illegal incentive program that North Carolina OSHA has, but that will be resolved at the state agency level. I understand all that. There is an irony here, and that is that we're dealing with a tragic death of two individuals. That would seem to be something that you bear responsibility for, and yet the North Carolina DOL is the one that's being called on the carpet for a policy that, in my view, has only an attenuated connection with what was happening here, which was to investigate the results of a very sad, sad situation. I understand your ex-party young argument. In a technical sense, when you look at the prayer for relief in the certain amount of sense, but it is just very troubling on another level that here the two people died quite possibly because of your safety violations and inability to respond. The Department of Labor is the one that's being called on the carpet. I understand the ex-party young argument. As a technical matter, it's a good one, but it doesn't sit well with me in terms of what is happening here and whether the and over something that you, I think, may well bear some responsibility for. I don't want to jump to conclusions on it, but OSHA was doing what it's supposed to do, which was to try to get this situation where fires and tragedies of this kind that claim workers' lives are to be prevented. They're looking into that, and they're investigating it, and here they're being called on the carpet for what seems to be an unrelated policy. It doesn't sit well with me, but at the same time, I understand in a technical fashion what the ex-party young argument is. It's set forth in the prayer for relief. Maybe ex-party young can be artfully pled. Do we have a doctrine that may not be an exception to the ex-party young exception, but how about cases that indicate that anybody can construct a complaint in this way and be in conformity with ex-party young? Is that artful pleading? Well, Your Honor, the issue here is that North Carolina OSHA has a policy that violates federal law, and that has nothing to do with this particular accident per se, because the accident was tragic, and there are forums where the families will be made whole to the extent possible under the law. You can't make people whole for something like this. I understand, and I don't disagree with Your Honor. It's a very tragic situation, but what we have here is Glasgow was cited, and during this process, we have discovered that North Carolina OSHA has a program where it at least evaluates its inspectors on how many citations and inspections they conduct, and that is illegal under federal law. That unfortunate accident in 2020 is at issue here, but also at issue is North Carolina OSHA, through its two officials, going forward incentivizing its inspectors to issue citations. That's going to apply not just in this case, but in every case where there's an OSHA inspection in North Carolina. I'm sure this Court does not want to uphold a decision or make a decision in this case where North Carolina OSHA can say, go out and issue 10 citations every time you go to a work site. What we want is North Carolina OSHA to be told, go promote safety. If an employer is doing something wrong, then cite them. If they're not doing something wrong, then don't cite them. We want them to call balls and strikes. We don't want them to expand the strike zone. So are we in a situation where after every tragedy and every loss of life, any subsequent OSHA investigation that results in the issuance of citations is going to be grounds for a lawsuit on the assertion that it was in violation of this federal statutory provision? So what does that do ultimately to OSHA's ability to carry out a larger congressional mandate, which is to help safeguard the safety and health of workers? Because we're in the situation now where if your argument prevails, and again, on a technical sense, I understand it. But any time OSHA looks into a national tragedy, and any time it issues citations, an automatic lawsuit follows, which is that they have violated this particular statutory provision, even what they've done, even when they've acted in accordance with what Congress wanted them to do in terms of workplace safety. So what's the endgame here? Are we in a situation where any tragedy, any investigation into a serious tragedy is going to result in a lawsuit against the North Carolina Department of Labor and OSHA itself? Yeah, Your Honor, it's a good question. The endgame here is that North Carolina OSHA just needs to stop it. They need to stop incentivizing their inspectors in violation of federal law. The endgame is achieved by this lawsuit. This lawsuit provides the injunctive relief for Blasco and employers in North Carolina to stop that. Once they stop that, then there's another tragedy that happens in North Carolina. There's an OSHA inspection. There's no lawsuit because North Carolina OSHA no longer incentivizes their inspectors to issue citations. This lawsuit is going to stop that. That's the endgame. No, but why can't you bring this same lawsuit any time that OSHA, any time that there's a fire or a flood or an industrial accident, OSHA goes to investigate the industrial accident. A complaint is framed in terms of prospective compliance with federal law. So are we not, I want to advance, are we in the position of saying that every time OSHA investigates a tragic industrial accident, that it's going to be faced with a lawsuit on a complaint drafted in this fashion? Your Honor, the way we've drafted this complaint meets the threshold question of Ex parte Young, and it should go. All right, but why couldn't every, why couldn't every, why couldn't this be just a bit of boilerplate? Yeah, just like it, just like it. I want to know I want to know why this doesn't go down the road and just appear, you can roll out a complaint as a matter of boilerplate against OSHA for any investigation into an industrial accident. I don't think this court would want any employer to face a situation where you're going to go up against state officials that are violating federal law. So to answer your question, Judge Wilkinson, going forward, if an employer was inspected or cited by North Carolina OSHA, they could file this lawsuit because the purpose of the lawsuit is to get North Carolina OSHA to stop violating federal law, just like Ex parte Young was, to stop the commissioners from lowering the tax of the railroad rates. Well, one could look at the purpose of this lawsuit as an attempt to shield from citation and investigation as a result of a tragic accident. Well, Your Honor, it would not be if North Carolina OSHA stops violating federal law. You're assuming a conclusion. Well, if they stopped this incentive program, then there would be no violation of federal law, and so therefore there would not be any lawsuits. And hopefully this lawsuit stops this program, and therefore there won't be a need for future lawsuits. But any employer could have filed this lawsuit, and it was not raised in the briefs, it was not a notice of appeal, so standing is not before this court as our position has noted in the briefs. But if Blasco, after having been inspected and cited, doesn't have standing to Who does? Mr. Vance, may I ask you a question? It's like the old adage, an ounce of prevention is worth a pound of cure. After you get the relief, the prospective relief you say you want, if they find statistically that places, because ideas you want to prevent, we don't want to give citations posthumously, as here, right? So if they find that places that have been inspected and their citations tend to be ones where there are no accidents or very low, but they find places where there are very few citations, there are more instances of when they say, no, we're not basing it on incentivizing the fact of citations, we are looking at the fact that it's saving lives based on our statistical type thing. But I'm just looking at what it would look like for the topic of popular labor, and going back to Judge Wilkinson's point, and you would say, wait a minute, wait a minute, you're writing a lot of, but they said, no, we write them not to incentivize, because we have found that there is a connection with writing them and very few violations. And the lower the number, the more later the tragic deaths occur. So you would say that's incentivizing because, what, you keep their job, they get a bonus? What does it look like if you win your injunction? Good question, Chief Judge Gregory. So if you just look at the OSHA Act, it says that they shall not use the results of enforcement activities, such as the number of citations issued or penalties assessed, to evaluate employees directly involved in enforcement activities under this Act, or to impose quotas or goals with regard to the results of such activities. What we want are for OSHA inspectors to go out and issue citations if there's a violation of an OSHA standard. And if there's not a violation of an OSHA standard, they don't have to issue a citation. And if they go out and they find 15 employers that don't have any violations, the inspectors should not be dinged, they should not get a bad evaluation because of that. They are simply looking for violations of standards and they want to keep people safe. South Carolina OSHA has 20 to 25 inspectors. It's another OSHA state plan. North Carolina has over 100. And historically, my understanding is that South Carolina has had better injury and illness rates. And what that tells me is that South Carolina, which does not have this quota, is looking to protect workers. And that should be the primary concern of employers and North Carolina OSHA. Go out there and write citations when they're warranted. But if they're not, an inspector should not be pressured because the evaluation forms they've already produced, in this case, specifically show, here's the number of citations we're going to evaluate, how many you've issued this year. And that's illegal. And it doesn't promote worker safety. To your point, Judge, we want workers to be safe. If there's a citation, then cite it. If there's not a citation, then don't cite it. Just like a police officer is watching speeders going down the street. If they see 10 speeders, then pull them over. If they don't see any speeders, then don't meet a quota that's not there. And just one last... For analogy, just to talk about due process and an injury to Blasco, if a food safety inspector went into a restaurant and they had a quota that says you had to have a C average on your inspections. They go into book binders, which I went to last night. Fantastic. They go in there and they give book binders a C minus because they have to meet that quota. What do you think happens to book binders? They're going to start losing customers. Same analogy here. If Blasco gets these citations under this illegal program under the OSHAC, it's going to impact Blasco's business opportunities. It's going to impact how people view them in the public. And it's a real injury. And that's our position here. And you think that injury exists no matter how meritorious those incentivized citations were? Well, no. If they're meritorious, is this... No, no, no. You said the problem is being incentivized. We haven't got to the point whether or not incentivized. It's like the state trooper. Incentivized, theoretically, doesn't mean that they weren't speeding. You see, that's not the same thing, right? Because you're saying, under you, what happened is, no matter how meritorious these citations are, the violation exists solely because of numerosity. Correct? It's the evaluation system, Your Honor. That's what violates the federal law. And so it doesn't matter how meritorious the citations were, correct? That's why we want to stop... I want to make sure you're right. It doesn't matter as long as illegally they incentivize by saying, you know, you need to write at least 20 in the coming year. That's right. So if that's a violation, it's because it's incentivized. But that has nothing to do with notwithstanding the fact that everyone was meritorious and perhaps saved lives, right? We want to keep workers safe, just like I think the agency does. But we don't... Lawyers can't be subject to an enforcement system that encourages inspectors to write citations when they're not warranted. For those reasons, Your Honor, we respectfully request that the district court's order denying the defendant's motion to dismiss based on sovereign immunity be affirmed. Thank you, Mr. Vance. Thank you, Your Honor. ISG has set forth a lot of analogies that are based on the fallacy that the federal provision applies to a state plan state. Let me ask you, just let me ask you a prefatory question. It seems to me that you have a very good argument on the standing and under the causation prong of standing that the injury here was not caused by any sort of quota system. It was caused by the fact that OSHA had an obligation to investigate a fire. Given the strength of your argument with respect to causation, why didn't you just raise the question of standing ab initio before the district court, rather than waiting up here and trying to shoehorn it into an ancillary issue on an interlocutory appeal? You know you're going to run into problems where you start tacking on um, antrical precedent and everything. Why wouldn't the way to litigate this case be just making a straightforward standing argument before the district court saying that the causation prong of standing is not met under the facts here? I don't understand why this case is being litigated the way it has been. Your honor, I can't fully answer that question. I had a supervisor, everyone has a supervisor, and I have a client and some of those decisions are as they say above my pay grade. But the position that we're in now is despite ISG's protestations that they're not seeking monetary damages, in fact they are. In their own complaint in the prayer for relief, they say that they don't want the maintaining of administrative proceedings. So if the North Carolina Department of Labor stops the proceedings against ISG, guess what? They don't have to pay $112,000. So just because they don't use the term monetary relief in their complaint doesn't mean they're not seeking monetary relief. Also they are trying to bootstrap this to the underlying OSHA case. They have in their own facts, repeatedly on page 22 of their complaint, they outline the specific enforcement activities against ISG. They talk about the fire, they talk about the employees who died. So they are bootstrapping this whole argument about the purported applicability of a federal provision through the underlying OSHA case. They chose to go that route. And if they are in fear of future violations that may occur, I guess they're saying that they're going to continue to have violations because otherwise there wouldn't be any issued. So I think that the points have been made and Mr. Judge Wilkinson has correctly identified where this is all headed. I'd be glad to answer any other questions. Thank you, counsel. Thank you both for your arguments. We appreciate those and we wish you well and be safe. Thank you.
judges: Roger L. Gregory, J. Harvie Wilkinson III, Toby J. Heytens